UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANTAE MONIQUE JONES,

        PETITIONER,

VS.                              CIVIL NO.: 04-40238
                                CRIM NO.: 01-50005

                                HON. PAUL V. GADOLA
UNITED STATES OF AMERICA,      MAG. JUDGE STEVEN D. PEPE

        RESPONDENT.

_____/

**REPORT AND RECOMMENDATION**

I.      **INTRODUCTION**

    Petitioner Shantae Monique Jones filed a "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody," (hereinafter "Petitioner's Brief") (Dkt. #64). Respondent, the United States of America, filed the "Government's Answer and Brief in Response to Petitioner's Motion Under 28 U.S.C. § 2255," on September 15, 2004, (hereinafter "Respondent's Brief") (Dkt. #67). "Petitioner's Reply Brief in Response to Government's Answer and Brief in Response to Petitioner's Motion Under 28 U.S.C. § 2255" was filed on October 25, 2004, (hereinafter "Petitioner's Reply") (Dkt. #69). Petitioner filed a "Motion/Brief to Expand § 2255 Motion to Vacate in Light of the Recent Billing in United States v. Booker," on March 14, 2005 (Dkt. #72). On June 23, 2005, Petitioner filed "Petitioner's Motion to Expand § 2255 Motion, in Light of 3 Issues Which Were Made Part, of the Record in this Case" (Dkt. #75). On October 21, 2005, "Petitioner's Motion Directing the District court to conduct an Evidentiary Hearing in Regards

1

to all Issues Argued and Presented in his Section 2255 Motion, as well as All Argument Amended through Motions in regards to Petitioner's Section 2255 Motion" was filed (Dkt. #78). On January 17, 2006, Magistrate Judge Capel Granted "Petitioner's Motion to Expand § 2255 Motion, in Light of 3 Issues Which Were Made Part, [sic] of the Record in this Case," (Dkt. #93), and ordered the Government to respond, which they did on January 24, 2007 (Dkt. #98). This matter has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)B). For the reasons stated below it is recommended that Petitioner's § 2255 Motion be **DENIED.**

## II.   FACTS AND PROCEDURAL HISTORY

The Sixth Circuit Court of Appeals set forth the following factual scenario on direct appeal, which is not contested, except as footnoted:

> On February 14, 2001, police in Flint, Michigan sent an informant to a residence at 1502 Illinois Street to make a controlled purchase of illegal narcotics. The informant did not purchase the drugs because the target seller was not at the residence. Another person at the residence advised the informant that the target was at Old Frank's Bar at 2012 Lewis Street, attempting to obtain illegal narcotics to sell. The informant told police that the target was a stocky black man in an old, light green Cadillac.
>
> Police then began a surveillance of Old Frank's Bar and observed the Defendant-Appellant, Shantae Monique Jones, near and inside a silver Cadillac in the parking lot of Old Frank's Bar. Jones fit the physical description provided by the informant. Police also saw Jones's sister in the Cadillac.
>
> We now know that the Cadillac belongs to Jones's sister.
>
> Beginning at around 7:00 p.m. on February 14, 2001, police began following the Cadillac. The vehicle stopped twice at Jones's home, 1826 Walcott, once at the home of Jones's paramour, at the parking lot of a Chi Chi's restaurant, and at a Best Buy store. Police testified at Jones's trial that the Chi Chi's and Best Buy are located in an area known for drug trafficking. At the two residences and at the restaurant, Jones left the car and returned several minutes later. In the restaurant parking lot, Jones entered and exited a white Jeep Cherokee. Officer Marcus Mahan of the Flint Police Department testified that each time Jones returned to the car, "he would reach down between his legs." J.A. at 117. Officer Mahan stated that "there was definitely something on the floorboard that he was dealing with." *Id.*

2

Officer Mahan told his supervisor, Sergeant Harold Payer, what he had seen. At Sergeant Payer's command, the car was stopped at 9:40 p.m. Sergeant Payer testified that based on his twelve years' experience as a narcotics investigator, what he and his fellow officers observed that night made him suspicious of drug activity. It was Sergeant Payer's suspicion, together with the informant's information, that led Police to stop the Cadillac.

The officers approached the vehicle and, according to Sergeant Payer, sought permission to search the vehicle. Jones claims that his sister did not consent to the search of the Cadillac, which she was driving at the time it was pulled over. The government contends that Jones's sister consented to a search of the vehicle, and Sergeant Payer testified to that effect.

Police searched the car and found a binocular bag containing the firearm upon which the first count of the indictment was based. Police arrested Jones for carrying a concealed weapon in a motor vehicle, in violation of state law, and took him to an interrogation room at the police station.

At 11:23 p.m. on February 14, 2001,[1] Jones was read his Miranda rights. Jones waived those rights and was interviewed by Sergeant Payer. Jones initially gave conflicting accounts of where he lived, so police used a key that they had taken from Jones at the police station to turn the lock at 1826 Walcott and thus verify that it was Jones's residence. The police did not enter the residence at that time. Sergeant Payer testified that he requested, and Jones gave, permission for police to enter his home and seize three firearms.[2]

Sergeant Payer testified that, while looking for the weapons, police found what was later verified to be cocaine residue in plain view. The officers inside Jones's residence informed Sergeant Payer that cocaine was believed to have been found, at which point Sergeant Payer asked, and Jones gave, permission to search the entire house.[3] Police found roughly 220 grams of crack cocaine and $7,000. Police never obtained a warrant to search Jones's house.

During the course of his interview with Sergeant Payer, Jones made inculpatory statements. Jones made additional inculpatory statements in a separate interview conducted by Drug Enforcement Administration Task Force Agent Cedric

---

[1]Petitioner contends that he was not advised of Miranda rights until 11:30 p.m. on November [presumably Petitioner meant February, not November] 14, 2001, after the officers gained entry into his home (Dkt. #69, page 8).

[2]Petitioner contends that the police were already in his home when he was coerced to consent to the search of his home (Dkt. #69, page 8).

[3]Petitioner contends that he was coerced into giving permission to search the house (Dkt. #69, page 8).

Kendall between 6:00 and 7:00 p.m. on February 15, 2001. Kendall testified that he does not think he read Jones the Miranda warnings before that interview.

Jones was indicted on one count of possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k), and one count of possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1). An evidentiary hearing was held on April 10, 2001. After that hearing, the defense filed a motion to suppress evidence seized from Jones's person, vehicle, and residence, as well all derivative evidence, [sic] resulting from searches conducted on February 14, 2001.

In an opinion and order dated May 18, 2001, the district court granted in part and denied in part the motion to suppress evidence. The district court ordered suppressed certain inculpatory statements made by Jones in an interview that took place on February 15, 2001. The district court held that the statements were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed.2d 694 (1966), because Jones was not read his Miranda warnings prior to the interview on February 15. The district court denied the motion to suppress with respect to all of the other challenged evidence. The case proceeded to trial, and a jury found Jones guilty on both counts of the indictment.

Jones filed a timely notice of appeal. On appeal, Jones argues that the district court erred in refusing to suppress evidence obtained after police stopped a car in which he was riding. Jones contends that the stop was illegal because the officers did not have a reasonable suspicion, supported by articulable facts, that criminal activity was afoot. Jones further contends that the subsequent search of the automobile, the seizure of a binocular bag containing a firearm, his arrest, his statement to police, and the search of his residence all resulted from the initial, illegal stop, and that any evidence obtained after and because of the illegal stop must be excluded under the "fruit of the poisonous tree" doctrine.

*United States v. Jones*, 75 Fed. Appx. 334, 335-337, 2003 WL 22025045, at *1-2 (6th Cir. 2003). The Sixth Circuit affirmed Petitioner's conviction. Petitioner then proceeded to challenge his conviction with the present motion.

Section 2255 requires that a district court hold an evidentiary hearing to determine the issues and make findings of fact and conclusions of law regarding the petitioner's case "unless the motion and the file records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see also Green v. United States*, 65 F.3d 546, 548 (6th Cir. 1995). It was determined

that an evidentiary hearing was necessary to decide Petitioner's ineffective assistance of counsel claims.

On October 17, 2005, a federal defender was appointed to represent Petitioner. On October 26, 2005, Attorney Joan E. Morgan was appointed in place of a federal defender. However, on November 10, 2005, Attorney Joan E. Morgan was allowed to withdraw. On November 17, 2005, Attorney Kenneth G. DeBoer was appointed to represent Petitioner. The evidentiary hearing was eventually set for November 22, 2005, however, due to the recent appointment of counsel, the matter was adjourned until December 7, 2005, on which date an evidentiary hearing was held regarding Petitioner's ineffective assistance of counsel claims.

## III.    STANDARD OF REVIEW

To prevail on a § 2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude, which had a substantial and injurious effect of influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637-638 (1993). To prevail on a § 2255 motion alleging non-constitutional error, the petitioner must establish a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)).

## IV.    ANALYSIS

Petitioner's Motion presents seventeen arguments. His initial § 2255 Motion argues the following fourteen grounds:

> (1) denial of effective assistance of counsel . . . for not challenging the arrest of movant at the evidentiary hearing;
>
> (2) no probable cause for arrest
>
> (3) Movant's sister lacked authority to give consent to search binocular bag that belonged to Movant;

(4) Movant was denied his right to due process when police did not give him his Miranda warning before asking permission to enter Movant's home;

(5) Police used coercive tactics to get Movant to agree to allow them to enter his home, and confess that there was firearms [sic] in his dwelling;

(6) Appellant [c]ounsel was ineffective for not adding to Movant's "Designation of Apendix Content" the reports that Movant made at the District Court's stage to show that Movant had an expectation of Privacy in his binocular bag found in his sister's automobile;

(7) Police may not exceed the physical bounds of the area which consent was granted [sic];

(8) All the evidence obtained against Movant in various searches including his place [sic] of residence; and his confession must be excluded under the "Fruit of the Poisonous Tree" Doctrine;

(9) Appellant's [trial] Counsel was ineffective for not challenging the standing issue of the search of the binocular bag;

(10) Appeal Counsel [sic] was ineffective for not challenging standing issue on [a]ppeal;

(11) Trial Counsel was ineffective for not taking the position that Movant had [] standing to challenge the search (Illegal) of his binocular bag found in his sister's automobile by the Flint Police Department;

(12) Trial Counsel was ineffective for not allowing Movant to give testimony at [e]videntiary [h]earing;

(13) Trial Court erred when it performed a Constructive Amendment to the Elements of Count Two (the drug quantity) of the Indictment filed against the Movant;

(14) and Movant was sentenced beyond the guidelines of Count Two of the indictment.

Petitioner's Motion to Expand (Dkt. #75), argues the following three additional issues:

confrontation issue of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004);

[c]ounsel was ineffective for not filing a *Miranda* Hearing request for petitioner at pre-trial; [and]

[c]ounsel was ineffective for not seeking a *Dunaway* hearing.

These claims can be divided into three main categories. First, some of the claims are procedurally

defaulted because Petitioner failed to raise them upon direct appeal. Second, Petitioner is attempting

to relitigate some of the claims raised in his direct appeal. Third, his ineffective assistance of counsel claims relate to both his appellate counsel.

### A. PROCEDURAL DEFAULT

On appeal, the Sixth Circuit explained Petitioner's arguments as follows:

> Jones argues that the district court erred in refusing to suppress evidence obtained after police stopped a car in which he was riding. Jones contends that the stop was illegal because the officers did not have a reasonable suspicion, supported by articulable facts, that criminal activity was afoot. Jones further contends that the subsequent search of the automobile, the seizure of a binocular bag containing a firearm, his arrest, his statement to police, and the search of his residence all resulted from the initial, illegal stop, and that any evidence obtained after and because of the illegal stop must be excluded under the "fruit of the poisonous tree" doctrine.

*Jones*, 75 Fed. Appx. at *337, 2003 WL 22025045, at *2. "[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165, 102 S. Ct 1584, 1593 (1982) (citations omitted).

Petitioner did not raise any claims (a.) regarding claims that his sister's lack of authority to consent to the search of the binocular bag, (b.) the police department's failure to give him a Miranda warning before searching his home,[4] (c.) whether the police exceeded the bounds of the area to which consent was given to search, (d.) whether the trial court erred in structuring the jury instruction relating to the elements charged in Count II, (e.) whether his sentence was beyond the guidelines of Count II of the indictment,[5] and (f.) whether he was denied his right to confront the

---

[4]The Sixth Circuit does discuss the *Miranda* issues as they relate to the district court's findings and the procedural history and facts; however, it is not an argument that is raised by Petitioner on appeal or analyzed by the Sixth Circuit. *Jones*, 75 Fed. Appx. at *337, 2003 WL 22025045, at *2.

[5]Petitioner's arguments that his counsel failed to object to this jury instruction and that his sentence is beyond the guidelines will be reviewed under his ineffective assistance of counsel

confidential informant pursuant to *Crawford*.[6] Rather, it is his argument on direct appeal that

everything came out of the illegal stop and is fruit of the poisonous tree. *Jones*, 75 Fed. Appx. at

*337, 2003 WL 22025045, at *2. His failure to raise these claims on appeal limits his ability to raise

the issues at this time. Where a defendant has procedurally defaulted a claim by failing to raise it

on direct review, the claim may be raised in a motion under § 2255 only if the defendant first

demonstrates either cause for the default and actual prejudice or that he is actually innocent.

*Bousley v. United States*, 523 U.S. 614, 622 (1998); *Fair v. United States*, 157 F.3d 427, 430 (6th

Cir.1998) (citation omitted). Where Petitioner "has not demonstrated cause, it is unnecessary to

determine if he has shown prejudice." *Eaddy v. United States*, 20 Fed. Appx. 463, 464, 2001 WL

1176382, at *1 (6th Cir. 2001) (unpublished) (citing *Bousley*, 523 U.S. at 623). Petitioner has

demonstrated neither cause nor prejudice regarding the claims he failed to raise upon appeal.[7]

Although Petitioner claims to have filed a "Pro Se Supplemental Brief" on appeal, he does

not attach the brief, nor does the Sixth Circuit reference it in its decision (Dkt. #69, page, 4). A

search revealed a copy of the document which was filed with the Sixth Circuit on April 24, 2003.

The issues raised in the "Pro Se Supplemental Brief" include:

> THERE WAS NO PROBABLE CAUSE TO STOP THE VEHICLE THE
> APPELLANT WAS A PASSENGER IN, REMOVE THE APPELLANT FROM

---

claims. *See infra* pp. 23-25.

[6]Further, even thought the issue is procedurally defaulted, the Respondent details in their responsive pleading why the claim would nevertheless be without merit (Dkt. #98, pages "4-8" (Respondent failed to number the pages of this document, therefore, the pages are treated as being numbered with the STATEMENT OF THE CASE as page "1")).

[7]Petitioner claims that his appellate counsel's ineffectiveness are the cause and prejudice of his failing to raise these arguments, which will be addressed separately under his ineffective assistance of counsel claims.

THE VEHICLE AND FRISK HIM BASED ON THE WORD OF AN INFORMANT WHOES [SIC] TIP WAS NOT CORROBORATED.

SEARCH OF THE AUTOMOBILE DEFENDANT WAS A PASSENGER WAS UNLAWFUL BECAUSE AUTOMOBILE'S OWNER DID NOT GIVE CONSENT FOR SEARCH.

THE SEIZED WEAPONS AND ALLEGED CONFESSION WAS THE PRODUCT OF UNLAWFUL POLICE CONDUCT AND THE FRUITS OF A POISONOUS TREE.

A CONVICTION UNDER 18 U.S.C. § 922(K) QUALIFIES AS AN "UNDERLYING OFFENSE. [SIC]

Some of these are not exactly the same issues that Petitioner is raising for the first time in his § 2255 motion.[8]  Other issues were decided by the Sixth Circuit on direct appeal and cannot be relitigated.[9]  Thus, this Pro Se Supplemental Brief does not change the fact that Petitioner's claims (a.) - (f.) are procedurally defaulted.

## B.    RELITIGATION

An argument previously addressed and rejected on direct appeal may not be relitigated through a § 2255 Motion, absent exceptional circumstances such as an intervening change in the law.  *Dupont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996); *see also Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996) ("because this issue was fully and fairly presented on direct appeal, petitioner could not now use a § 2255 petition to relitigate it, absent an intervening change in the law.").  Because no such circumstance exist in this case, Petitioner's arguments relating to lack of probable cause for arrest, coercive tactics used by the police in gaining a confession regarding the

---

[8]Petitioner argues in his "Pro Se Supplemental Brief" that his sister did not consent to the search of her automobile and at the same time he argues that she was unaware that she could refuse to consent.  "Pro Se Supplemental Brief" at page 7.  Nonetheless, this is a separate issue from the one raised here that his sister did not consent to the search of the binocular bag.

[9]*See infra* pp. 10-11.

firearms in his home, and that evidence obtained in the search of his home and his confession are "fruit of the poisonous tree" above should be denied.

The Sixth Circuit's reasoning would also demonstrate Petitioner has no Fourth Amendment claim. On direct appeal, the Sixth Circuit held

> In this case, Jones has not shown that he had a subjective expectation of privacy in either his sister's car or the binocular bag in which the firearm was found. A passenger in a car has no reasonable expectation of privacy that would permit him to challenge a search of the car on Fourth Amendment grounds, *United States v. Twilley*, 222 F.3d 1092, 1095 (9th Cir.2000); *United States v. Eylicio-Montoya*, 70 F.3d 1158, 1162 (10th Cir.1995), and Jones has introduced no evidence that he had a subjective expectation of privacy in the binocular bag.

> The other evidence used to convict Jones was obtained when police searched his home. The Government claims that Jones consented to a search of his home. Jones apparently does not deny that he gave police permission to enter his home. Instead, Jones argued in the district court that any consent given was involuntary. As the district court explained, Jones failed to show that his consent was *involuntary*. On appeal, Jones has again failed to produce any evidence that his consent was involuntarily given. Rather, he merely resurrects arguments that the district court properly rejected. *See, e.g.*, Pro Se Appellant's Br. at 4 ("No consent to search form was used...."). For these reasons, the searches of the Cadillac, the binocular bag, and Jones's residence were all legal, and evidence obtained during these searches was properly allowed. . . .the initial stop of the Cadillac on February 14, 2001 was not illegal. Therefore, we must reject Jones's "fruit of the poisonous tree" argument.

*Jones*, 75 Fed. Appx. 334, at 339-40, 2003 WL 22025045, at *5 (emphasis added). Thus, the issues have been addressed and rejected. Petitioner may not relitigate those claims here.

## C.   INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner's separate claims of ineffective of assistance of counsel are properly before this court, even though they were not raised on direct appeal. "Ineffective assistance of counsel claims are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255 so that the parties can develop an adequate record on the issue." *United States v. Foster*, 376 F.3d 577, 593 (6th Cir. 2004) (quoting *United States v. Daniel*, 956 F.2d 540, 543 (6th

Cir.1992); *see also Massaro v. United States*, 538 U.S. 500 (2003) (ineffective-assistance-of-counsel claims may and should be brought in 28 U.S.C. § 2255 proceeding)).

To show that he was denied the effective assistance of counsel under federal constitutional standards,

> [f]irst, defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Nonetheless, Petitioner "cannot use a § 2255 proceeding, in the guise of ineffective assistance of counsel, to relitigate issues decided adversely to him on direct appeal." *Clemons v. United States*, 2005 WL 2416995, at *2 (E.D. Tenn. 2005) (citing, *see e.g.*, *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir.1996).

In evaluating alleged prejudice resulting from ineffective assistance of counsel, "[i]t is not enough . . . to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Indeed, "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* (citation omitted). Rather, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The standard to be applied is not that of a hypothetical perfect counsel, but that of reasonably effective counsel under prevailing professional norms. *Strickland*, 466 U.S. at 687-

88. The fundamental test of effective assistance of counsel is whether counsel "bring[s] to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Id.*

When evaluating counsel's performance under the *Strickland* test, the Sixth Circuit has emphasized that "[a] reviewing court must give a highly deferential scrutiny to counsel's performance. . ." *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993). This is based on the well-established principle that legal counsel is presumed competent. *United States v. Osterbrock*, 891 F.2d 1216, 1220 (6th Cir. 1989). As the Court in *Strickland* stressed:

> it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

466 U.S. at 689.

"The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). A fair assessment of the performance of Petitioner's counsel requires that every effort be made to eliminate the distorting effects of hindsight, so as to reconstruct the circumstances of his challenged conduct, and to evaluate the conduct from his perspective at the time. *Stickland*, 466 U.S. at 689.

Federal court review presumes that an attorney "is competent, and therefore, 'the burden rests on the accused to demonstrate a constitutional violation.'" *United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995) (quoting *United States v. Cronic*, 466 U.S. 648, 658 (1984)).

### 1.    Trial Counsel

Petitioner alleges that his trial counsel was ineffective for failing to argue there was no probable cause for his arrest at the evidentiary hearing, for failing to take the position that Petitioner had standing to challenge the search of the binocular bag, for failing to allow Petitioner to give testimony at the evidentiary hearing, for erring in performing a constructive amendment to the elements of Count II of the indictment, for failing to file a *Miranda* motion, and for failing to seek a *Dunaway* hearing.

First, Petitioner argues that trial counsel should have argued that there was no probable cause of his arrest. Petitioner argues that "[s]ince the firearm was found in movant's sister's auto in a binocular bag that Police failed to ask the movant or his sister whom the bag belonged to; criminally legally the bag belonged to the sister at the time of the arrest." (Dkt. #64, page 5).[10]

Respondent argues that trial counsel did argue that the arrest was without probable cause as is evident by the pleadings filed in support of the motion to suppress. Trial counsel argued "defendant submits that the officers' conduct toward him amounted to an arrest, not supported by probable cause." (Dkt. #13, page 10). Initially, trial counsel also argued that "Defendant expects the evidence to establish that the stop of Defendant's vehicle and his arrest were not supported by probable cause." (Dkt. #9, page 3). Thus, it is incorrect for Petitioner to assert that trial counsel was ineffective for failing to raise an issue that he did in fact raise.

---

[10]Inconsistent with this argument, Petitioner also argues that the binocular bag was his and that he had a subjective expectation of privacy in it to show that the search of the bag was illegal.

Next, Petitioner argues that trial counsel should have challenged the standing issue. Yet, a review of the district court's Order following the evidentiary hearing on the Petitioner's motion to suppress reveals the following: "[b]ecause Defendant had adduced no evidence that he had a subjective expectation of privacy in either the Cadillac or the binocular bag, the Court holds that Defendant has not demonstrated that he has standing to challenge either of those items." (Dkt #17, page 11) (citation omitted). Further, in its Order on Petitioner's Motion for Reconsideration, the district court held:

> [a] second reason that the Court denies Defendant's motion for reconsideration is that, assuming arguendo that Defendant had standing to challenge the search of the binocular bag, the Court finds, for reasons stated on pages four through seven of the Government's brief, that Defendant's sister consented to the search of the binocular bag that was in the Cadillac. For that reason, had Defendant established standing to challenge the search of the binocular bag, the Court would not have suppressed the evidence flowing from the search.

(Dkt. #22, page 3).

Thus, any arguments Petitioner makes regarding his attorney's failure to raise the standing or issue or when it was first raise fail under *Strickland* based on the district court's Order on his motion for reconsideration. Even if his attorney fumbled the standing issue over the binocular bag, under the second prong of *Strickland*, it would be impossible to show prejudice because the district court specifically stated it would not have suppressed the evidence even if Petitioner had standing. Further, he cannot show that he did in fact have a subjective expectation of privacy in the binocular bag. *See infra* pp. 27-31.

Petitioner also alleges ineffective assistance of counsel for not allowing him to testify at the evidentiary hearing. An evidentiary hearing relating to this §2255 Motion was held on December 7, 2005, for the sole purpose of determining whether trial counsel was ineffective.

The specific issue considered was whether trial counsel refused to allow Petitioner to testify at the evidentiary hearing on Petitioner's motion to suppress. When asked whether trial counsel "indicated he would not allow you to testify," Petitioner stated "[t]hose were his specific words." (Dkt. #92, page 18). Petitioner testified that his trial counsel

> said if I testify at the evidentiary hearing then my testimony will be used later at trial against me . . . to gain a convictions. . . . He said that I'm not going to allow you to testify because if you go to the evidentiary hearing and you testify, your testimony will be used against you.

(Dkt. #92, pages 18-19). Petitioner stated that he did not understand that the ultimate decision to testify was up to him. *Id.* at 19. Further, he reiterated that trial counsel stated that the Government would use his testimony against him, so he was not going to allow Petitioner to testify and Petitioner stated that he relied on this advice. He testified that "[b]ecause he's an attorney and I was a client. And I don't know how many years he been studying law, so I just took his professional advice." (Dkt. #92, page 20).

Trial counsel testified that

> [c]ertainly he expressed a desire as he has testified, to - - to testify at that hearing. I advised him that I didn't feel it was in his best interest to testify at that hearing. That I thought his sister was a much more credible witness as to the events that she could testify about. And that as to the other events that I didn't believe that his testimony would be accepted by the Court in any event and there were some downsides to him testifying as well. . . .certainly if he testifies at the evidentiary hearing, in addition to giving you a - - you meaning the government, a sneak preview as to what his testimony is going to be at trial, he also opens himself up for impeachment by - - by that testimony if he testifies differently at trial. . . . I don't recall what words I used. I don't think I would have said, I'm not going to allow you to testify. I continue to believe that it's my decision eventually, although we never reached that point that I can recall in this case. We discussed it, he wanted to testify, I pointed out the disadvantages, and I think actually the final decision not to call him to the stand didn't actually occur until in the courtroom. . . . I would say he acquiesced in my advice.

(Dkt. #92, pages 60-61). Further, trial counsel testified that Mr. Henke would have likely been present at the office meeting and he was definitely present in the courtroom. Mr. Henke testified, corroborating trial counsel's testimony, that

> early on in that morning of - - of April 10th, 2001, while seated in the office we had a lengthy conversation with Mr. Jones in regards to a hearing later that day. Mr. Jones was voicing his opinion that he thought he wanted to testify.
>
> There was discussion on that that could be very bad for him. Mr. Sasse talked with him in regards to - - I recall the term two bites of the apple that the Government would both be able to take testimony from him at the hearing, then again know what his testimony was going to be at trial.
>
> Mr. Jones - - there were other issues that were discussed in regards to the downside of Mr. Jones testifying. And I recall as we left - or as Mr. Jones and his sister left the office, that to appear later in Court for the hearing that there was no decision made at that time. The - - the final decision that he would not testify was made after the Government put on their - - their case at the hearing.

(Dkt. #92, pages 102-03). Mr. Henke testified that Petitioner agreed with the decision, but also stated that there were meetings between Petitioner and trial counsel where he was not present and does not know the content of those conversations. *Id.* at 103-04. Mr. Henke testified that he was sitting at the counsel table during the evidentiary hearing and "it was a real group meeting where we all put our heads together when it became our turn. And we discussed it at the - - at the table. It was still Mr. Sasse's opinion that he should not testify and he agreed to that." *Id.* at 105. Mr. Henke continued that trial counsel did not tell Petitioner that he could not testify, stating "[h]e did not - - he did not say he could not testify, nor in my eight years I've ever heard him say that to a client." *Id.* at 105-06.

"It is true that the Sixth Amendment requires defense counsel to provide a criminal defendant with adequate advice and consultation about his or her Fifth Amendment right to testify." *Flood v. Phillips*, 90 Fed. Appx. 108, 118, 2004 WL 193164, at *9 (6th Cir. 2004).

16

"The right of a defendant to testify at trial is a constitutional right of fundamental dimension and is subject only to a knowing and voluntary waiver by the defendant." *Walker v. United States*, 2000 WL 1871681, at*2 (6th Cir. 2000) (citing *Rock v. Arkansas*, 483 U.S. 44, 52, 53 n. 10 (1987)).

> A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel. *Joelson*, 7 F.3d at 177. At base, a defendant must "alert the trial court" that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. *Pelzer*, 1997 WL 12125 at *2. When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so. *Joelson*, 7 F.3d at 177.

*United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000). *See also United States v. Campbell*, 86 Fed. Appx. 149, 154, 2004 WL 113501, at *4-5 (6th Cir. 2004). Petitioner relies on *United States v. Salvucci,* 448 U.S. 83, 89-90 (1980), which quotes *Simmons v. United States*, 390 U.S. 377, 394 (1968) where:

> [t]he Court found that, in effect, the defendant was
>
> "obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination. In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another. We therefore hold that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection."

Yet, in *Salvucci*, the Supreme Court explicitly stated that they were not deciding whether his testimony at trial could be impeached by his testimony at the suppression hearing:

> respondents maintain that while *Simmons v. United States*, 390 U.S. 377, 88 S. Ct. 967, 19 L.Ed.2d 1247 (1968), eliminated the possibility that the prosecutor could use a defendant's testimony at a suppression hearing as substantive evidence of guilt at trial, Simmons did not eliminate other risks to the defendant which attach to giving

testimony on a motion to suppress. [footnote omitted] Principally, respondents assert that the prosecutor may still be permitted to use the defendant's testimony to impeach him at trial.

> A number of courts considering the question have held that such testimony is admissible as evidence of impeachment. *Gray v. State*, 43 Md.App. 238, 403 A.2d 853 (1979); *People v. Douglas*, 66 Cal.App. 998, 136 Cal.Rptr. 358 (1977); *People v. Sturgis*, 58 Ill.2d 211, 317 N.E.2d 545 (1974). *See also Woody v. United States*, 126 U.S.App.D.C. 353, 354-355, 379 F.2d 130, 131-132 (Burger, J.), cert. denied, 389 U.S. 961, 88 S.Ct. 342, 19 L.Ed.2d 371 (1967).

> ***This Court has not decided whether Simmons precludes the use of a defendant's testimony at a suppression hearing to impeach his testimony at trial.[11]***

> This Court has held that "the protective shield of *Simmons* is not converted into a license for false representations . . . ." *United States v. Kahan*, 415 U.S. 239, 243, 94 S.Ct. 1179, 1181, 39 L.Ed.2d 297 (1974).

448 U.S. at 93-94 (footnotes omitted) (emphasis added). Thus, Petitioner misrepresents the application of *Salvucci* in his case. This was the exact issue that trial counsel was concerned with when he stated "certainly if he testifies at the evidentiary hearing, in addition to giving you a - - you meaning the government, a sneak preview as to what his testimony is going to be at trial, he also opens himself up for impeachment by - - by that testimony if he testifies differently at trial." (Dkt. #92, page 61). Thus, Petitioner's reliance on *Salvucci* does not show an error because trial counsel was making a tactical decision.

---

[11]The Sixth Circuit has held that "the Supreme Court has made clear that evidence suppressed because it is the product of an illegal search and seizure can be introduced to impeach the testimony of the defendant, which is when it was introduced in this case." *Bobo v. United States*, 959 F.2d 233, 1992 WL 64733, *1 (6th Cir. 1992) (citing *United States v. Havens*, 446 U.S. 620, 624-28 (1980).

Although the ultimate decision whether to testify rests with the defendant, when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed. *Joelson*, 7 F.3d at 177. This is so because the defendant's attorney is presumed to follow the professional rules of conduct [footnote omitted] and is "strongly presumed to have rendered adequate assistance" in carrying out the general duty "to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution."

*Weber*, 208 F.3d at 551 (quoting *Strickland v. Washington*, 466 U.S. 668, 688-90, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

Whatever the reason given, the parties agree that defense counsel's decision to advise Petitioner not to testify was a tactical one based on trial strategy. As such, Petitioner's assent is presumed as is the effectiveness of Petitioner's counsel, barring any indication by Petitioner at trial that he disagreed with his counsel. *See id.*

The record is void of any such indication by Petitioner. Indeed, as the magistrate noted, Petitioner did not raise this claim until nearly six years after his conviction, and after his appeal as of right was rejected, (J.A. at 244 n. 1), let alone voice any such concern at trial. Furthermore, based upon the testimony elicited at the hearing on this issue, Petitioner has not overcome the presumption that he willingly agreed with his counsel's advice not to testify and that his counsel rendered effective assistance. The magistrate credited the testimony of defense counsel when counsel stated that it was his customary practice to advise his clients of their Fifth Amendment rights, even though counsel could not specifically remember the advice that he gave to Petitioner. The magistrate discredited what he found to be Petitioner's selective memory of the advice provided by defense counsel. Because this court does not disturb issues of credibility, the magistrate (and therefore the district court) did not clearly err in making his findings, and that Petitioner's argument thus fails.

*Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000).

Additionally, Petitioner has failed to show any coercion by counsel in his claim. His own testimony seems contradictory. Although he claims at one moment that his counsel absolutely said he would not allow him to testify, it bears repeating that a moment later, he said, "[b]ecause he's an attorney and I was a client. And I don't know how many years he been studying law, so I just took his professional advice." (Compare Dkt. #92, pages 18-19, with page 20). The Sixth Circuit held

in *Pagani-Gallego v. United States*, 76 Fed. Appx. 20, 23-24, 2003 WL 22071468, at *3 (6th Cir. 2003), that Petitioner did not allege "that he was unaware of his right to testify, that his attorney did not consult him about his decision whether or not to testify, or that his attorney intimidated him, threatened him, or otherwise interfered with his decision whether or not to testify. Rather, Pagani-Gallego merely asserts that counsel 'refused to allow him to testify.'" The court stated that "[u]naccompanied by coercion, however, legal advice concerning exercise of the right to testify infringes no right." *Id.* (citing *United States v. Teague*, 953 F.2d 1525, 1534-35 (11th Cir.1992) (en banc)).

   In the present case, trial counsel testified that he did not remember exactly what was said, and explained " I don't recall what words I used. I don't think I would have said, I'm not going to allow you to testify."[12] (Dkt. #92, page 61). The Sixth Circuit

> addressed a similar scenario in *Gonzales v. Elo*, 233 F.3d 348 (6th Cir.2000). There, the petitioner claimed that he was denied effective assistance of counsel by his attorney's failure to inform him that he could assert the right to testify despite his attorney's advice not to do so. 233 F.3d at 354. The magistrate judge's report, which was adopted by the district court, stated that "defense counsel did not have an independent recollection of the specific advice that he rendered to [the petitioner] on the issue of his right to testify. Nonetheless, [defense counsel] was able to testify as to his customary practice with regard to advising his clients of their right to testify in criminal matters." *Id.*

> In reaching a decision in *Gonzales*, this Court noted that the trial court credited the defense counsel's testimony as to his customary practices, and discredited the testimony of the petitioner. *Id.* at 357. It then went on to find that "because this court does not disturb issues of credibility, the magistrate (and therefore the district court) did not clearly err in making his findings, and . . . Petitioner's argument thus fails." *Id.*

---

[12]Trial counsel also testified that he thought and continues to think that the final decision on whether his client should testify is his decision as attorney; however, he stated that it never got to that point. (Dkt. #92, page 61). Therefore, the undersigned will not pass judgment on this statement as it is not necessary for the analysis here.

*Moss v. United States*, 323 F.3d 445, 469 (6th Cir. 2003).Here trial counsel's statements regarding the discussions is more credible than Petitioner's statement.  Petitioner has not demonstrated that he was coerced into not testifying nor that his not testifying was anything more than acquiescence to the advice and experience of his trial counsel.

Further, even if Petitioner satisfied the first prong of *Strickland*, he is hard pressed to show that he satisfied the prejudice prong.  In *Collins v. United States*, 67 Fed. Appx. 888, 890, 2003 WL 21418236, at *2 (6th Cir. 2003), where the petitioner failed to satisfy either prong, the Sixth Circuit held

> A review of the record supports the district court's view that Collins failed to satisfy either prong of *Strickland*.  The affidavit of Collins's trial counsel shows that, at best, the claimed failure to advise was in dispute, the resolution of which this court will not disturb.  *See Moss v. United States*, 323 F.3d 445, 469-70 (6th Cir.2003) (citing with approval *Gonzales v. Elo*, 233 F.3d 348, 354-57 (6th Cir.2000)).  More importantly, however, is the accuracy of the district court's assessment of the minimal impact Collins's blanket denials would have had against the impressive body of circumstantial and testimonial proof against Collins.  It is extremely doubtful that the result of the proceedings would have been different or that Collins's allegations undermine confidence in the outcome of his trial.  *Strickland*, 466 U.S. at 694. The state of the record, coupled with the absence of any indication by Collins at trial or on appeal, shows that he failed to carry his heavy burden to show that his trial was fundamentally unfair. This appeal lacks merit.

*Collins*, 67 Fed. Appx. at 890, 2003 WL 21418236, at *2.  In *Pagani-Gallego*, 76 Fed. Appx. 20, 23-24, 2003 WL 22071468, at *3, Petitioner also failed to satisfy the second prong, and the Sixth Circuit held

> [a] reasonable juror could easily have discredited Pagani-Gallego's proposed testimony in light of the overwhelming evidence against him, his multiple confessions to law enforcement agents, and his taped conversations.

> Finally Pagani-Gallego has not provided sufficient information about what his testimony would have been. He merely suggests that he would have testified that he did not make a confession. Thus, Pagani-Gallego has failed to demonstrate how his proposed testimony might have changed the jury's decision.

This is not a case where only the Petitioner could give critical evidence. Here Petitioner's sister was a suitable surrogate. When Petitioner was asked what he would have testified to that his sister was unable to cover, he responded that he would

> have been able to make the Court aware of the fact that the binocular bag with the firearm found in it that was - - that was found in my sister's car belonged to me.
>
> I would have been able to testify to the fact that prior to the bag being searched I never give consent to the police officers to search the bag. I would have been able to testify that - - and at the time of the stop of the car I was removed from the car by officers on my side of the car that had guns drawn on my side and taken out of the car and pat down - - taken out of the car, handcuffed, and pat down, you know, like a frisk, stop and frisk, placed in the back of a police car.
>
> And I would have been able to testify to the fact that there was a interrogating officer and he - - he wrote on a plain piece of paper, you know, to - - notes of the interrogation. And he stated - - you know, he asked me who the firearm and the binocular bag belonged to and I told him that the bag and the gun, was you know, it belonged to me, which it was my property. I told him - - I would have been able to testify to the fact that I informed him that - - that my sister didn't even know the binocular bag or gun was inside her car.

(Dkt. #92, pages 22-23). Petitioner acknowledged that his sister's testimony at the suppression hearing was that she did not know the gun or bag was there and did not know who it belonged to (*Id.* at 23). Additionally, he acknowledged that at the suppression hearing, an officer testified confirming his ownership of the bag during interrogation (*Id.*). Further, he testified that had he testified at the suppression hearing, he would have alleged an expectation of privacy in the binocular bag (*Id.* at 24). There is no reasinable probability that any or all of this testimony would have altered the Court's ruling on lack of standing of a Fourth Amendment violation.

Thus, Petitioner cannot show prejudice because the outcome of the case would not have been different. As stated previously, the trial court held that even if Petitioner had standing to challenge the binocular bag, the ruling would be the same (Dkt. #22, page 3). *See supra*, discussion at 14.

Petitioner also alleges that trial counsel was ineffective regarding a constructive amendment to Count II of the indictment. Petitioner argues that the jury instructions were modifications of the two elements in Count II. Yet, as the Respondent points out,

> If the jury found the Petitioner guilty, the jury was then instructed to determine the amount of cocaine bas for which Jones was to be held accountable:
>
>> First, you must decide whether the defendant is guilty of possession with the intent to distribute cocaine base. Next, if you find that the defendant was responsible for the cocain base, that is crack cocaine charged in Count 2, you also must find beyond a reasonable doubt the amount of cocaine for which the defendant is accountable.
>>
>> And that would be first of all determined whether - - beyond a reasonable doubt the amount of cocaine for which he's accountable is less than five grams, or five grams or more, or 50 grams or more.
>>
>> If you find the defendant guilty you should check one, but only one of the ranges, that is the range of weight, indicated on the verdict form.

(Dkt. #67, pages17-18 (citing R.52 Trial Transcript, Vol.5, p79)). Respondent explains that the jury instructions were not modifications, rather, the three choices included the amount charged in the indictment as well as "two other choices [that] were 'lesser' offenses in defendant's favor." (Dkt. # 67, page 18).

Petitioner then insists in a reply pleading that the amount of cocaine that he was held responsible for is in violation of *Blakely v. Washington*, 542 U.S. 296 (2004) (Dkt. 69, page 17). On the verdict form, the jury clearly marked "50 grams or more of cocaine base (crack cocaine)" (Dkt. #36). Petitioner was then sentenced to 60 months on Count I and 188 months on Count II to be served concurrently (Dkt. #40). *Blakely* followed the rule in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). "This case requires us to apply the rule we expressed in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)." *Blakely v. Washington*, 542 U.S. at 2535. In *Apprendi*, the Supreme Court held that any fact, other than the fact of a prior conviction, that increases the

penalty for a crime beyond the prescribed statutory maximum must be proven beyond a reasonable doubt. In the present case the quantity was proven beyond a reasonable doubt because the jury specifically made a finding as to the amount of cocaine base. Thus, there was no error under *Apprendi* and its progeny.

Petitioner also argues that trial counsel was ineffective for failing to file *Dunaway* or *Miranda* hearings. Yet, as Respondent points out

> [a]t the trial court level, defendant's appointed counsel, FDO attorney Kenneth R. Sasse, filed a motion to suppress virtually all of the government's evidence on March 27, 2001. (R. 9: Motion to Suppress Evidence). An evidentiary hearing was held on April 10, 2001. On May 3, 2001, Mr. Sasse filed a supplemental brief in support of his motion to suppress evidence. (R. 13: Supplemental Memorandum in Support of Support of Motion to Suppress Evidence). In that filing, counsel challenged the legality of the car stop, the legality of the consents to search the car and the defendant's residence, and all derivative evidence flowing from those events. Counsel specifically challenged "whether statements made by Defendant were the product of unconstitutional police conduct and/or are inadmissable for failure to adhere to *Miranda v. Arizona*". (R. 13: Memorandum at p 6.) Counsel also moved for the suppression of all statements as resulting from "exploitation of police illegalities." (R. 13: Memorandum at p 15). Accordingly, petitioner's claim that trial counsel was ineffective for failing to challenge the admissibility of his statements under *Miranda v. Arizona* is simply wrong. Counsel pursued every challenge to the defendant's statements in his pleadings and during the evidentiary hearing. Certainly, calling the hearing that was held an "evidentiary hearing" rather than a "Miranda hearing" exalts form over substance. In fact, in the trial court's written opinion and order, Judge Gadola addressed the *Miranda* issue twice. On the first occasion, the judge ruled that Jones understood and waived his rights–resulting in the holding that the statement given to Sgt. Payer on February 14-15, 2001, was admissible. *United States v. Jones*, 147 F.Supp.2d 752, 761 (EDMI, May 18, 2001).

>> In the defendant's supplemental motion and brief, Jones claims that the judge's reference to a signed Miranda waiver is incorrect in that "the records of this case clearly show that Petitioner never signed a Miranda waiver form." (Emphasis added). It is clear that Jones signed a two-page, hand written document that was identified as the interview sheet/statement of Jones memorializing the interview of Jones that was conducted by Sgt. Payer between 11:23pm, February 14, 2001 and 1:14am, February 15, 2001. As Sgt. Payer testified at the evidentiary hearing and again at trial (Trial Transcript, Volume Two, pp 51-52), this document evidences the fact that Sgt. Payer advised Jones of his Miranda rights during the interview at 11:30pm, that Jones acknowledged understanding all of his rights, that Jones

chose to waive his rights and that Jones chose to speak with Payer at that time. At the conclusion of the interview, Jones made and initialed various corrections and then signed the document. None of the changes tht [sic] were made concerned the Miranda rights or the waiver. The government believes that this is the signed Miranda waiver to which Judge Gadola referred at p 761 of his opinion and order. (147 F.Supp.2d at 761). Only Jones refers to a Miranda waiver form. The judge did not. Additionally, Sgt. Payer's testimony indicates that he was relying on Jones' oral waiver of rights when he responded affirmatively to the question: "And so he [Jones] agreed to talk to you at that time?" (R. 12: Evid. Hrg. Tr., Payer, p 52).

On the second occasion, the judge ruled that defendant Jones had not knowingly waived his Miranda rights prior to giving a statement to Officer Kendall on February 15, 2001, and suppressed that statement. Id. At 761-62. (That statement was admitted at trial, not in the government's case in chief, but only during the presentation of the defendant's case when it was used by the government to impeach Jones' testimony.)

(Dkt. #98, pages "8-10"). Thus, Petitioner cannot meet the first prong of *Strickland*, which requires that he show his counsel was deficient. Counsel raised the issues that would have been raised in a "*Miranda* hearing," and in fact the district court ruled twice as Respondent indicates above on *Miranda*, once in favor of Petitioner. There is no error.

Further, as to the need for a *Dunaway* hearing, Respondent makes an argument similar to that regarding the *Miranda* hearing, stating that

Jones entitles his third amended claim as: "Counsel was ineffective for not seeking a Dunaway hearing". Jones cites *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248 (1979). He defines a "Dunaway hearing" as "a hearing to determine whether evidence has been seized from an accused in violation of his or her Fourth Amendment Right, as by a search conducted without probable cause." (Defendant's Brief at p 7.) In making this claim, defendant ignores the plain fact that his trial counsel moved to suppress virtually all on the evidence seized in this case and that an evidentiary hearing was held as a result of that motion. Obviously, calling a hearing a

"Dunaway hearing" rather than a suppression hearing or an evidentiary hearing on a motion to suppress evidence is once again to exalt form over substance.

(Dkt. # 98, page "10"). Again, Petitioner would be unable to meet even the first prong of *Strickland*, given that his trial counsel did in fact make a motion and a hearing was held on the

suppression of evidence. Despite trial counsel's attempts to convince the court otherwise, the district court determined that there was no Fourth Amendment violation relating to the stop (Dkt. #15, page 11).

### 2.    Appellate Counsel

Petitioner alleges that his appellate counsel was ineffective for not including in the appellate record certain documents to show that Petitioner had a subjective expectation of privacy in the binocular bag and for not challenging the standing issue relating to the binocular bag. Petitioner relies on his Affidavit dated May 24, 2001, for proof that he had a subjective expectation of privacy in the binocular bag. He faults appellate counsel for failing to attach the affidavit, Memorandum in Support of Motion for Reconsideration, Defendant's Memorandum in Reply to the United States Response to Defendant's Motion for Reconsideration, and the district court's Order on the motion for reconsideration, to the brief on appeal.[13] Additionally, Petitioner alleged during the 2255 hearing that his appellate counsel failed to raise issues that he thought were important in terms of his focus on issues and organization. (Dkt. #92, pages 41-49).

Starting with the last issue first, Petitioner's argument basically is that he disagreed with trial counsel's legal strategy. During the hearing, Magistrate Judge Capel asked Petitioner whether trial counsel "move[d] for suppression of the bag, just on a different means than you thought he should have," to which Petitioner replied, "yes, in a different means. I feel that he improperly challenged it . . . [b]ecause they was improper." (Dkt. #92, page 50). In any event, the issues he challenges are without merit for the reasons stated below.

---

[13]Petitioner also claims in a reply brief that appellate counsel did not raise the probable cause issue on direct appeal (Dkt. #69, page 5). Yet, the issue was raised on direct appeal.

On appeal, the Sixth Circuit held that

> [i]n this case, Jones has not shown that he had a subjective expectation of privacy in either his sister's car or the binocular bag in which the firearm was found. A passenger in a car has no reasonable expectation of privacy that would permit him to challenge a search of the car on Fourth Amendment grounds, *United States v. Twilley*, 222 F.3d 1092, 1095 (9th Cir.2000); *United States v. Eylicio-Montoya*, 70 F.3d 1158, 1162 (10th Cir.1995), and Jones has introduced no evidence that he had a subjective expectation of privacy in the binocular bag.

*Jones*, 75 Fed. Appx. at 339, 2003 WL 22025045, at *5. Jones also argues that it was "apparent and blatantly obvious that the officer who searched the automobile and found the gun in the bag reasonably believed the gun in the bag belonged to petitioner." (Dkt. #69, page 7).

The question becomes whether the course of action, or lack thereof, by appellate counsel rises to the level of ineffective under the two prongs of *Strickland*. First, it is necessary to determine whether this conduct was deficient under the Sixth Amendment. Appellate counsel did raise the issue of the binocular bag and this is obvious from the Sixth Circuit's discussion of it. In the discussion, it is apparent that the Sixth Circuit did not find that Petitioner had enough evidence to show a "subjective expectation of privacy in the binocular bag." *Jones*, 75 Fed. Appx. at 339, 2003 WL 22025045, at *5.

Similarly, as to the standing issue as it relates to the binocular bag, Petitioner's argument is that if appellate counsel argued the that Petitioner had standing to challenge the search of his binocular bag, the result would have been different. Yet, the Sixth Circuit found that there was no evidence of standing to challenge the bag because they did not find sufficient evidence to show a subjective expectation of privacy in the bag.

> A defendant bears the burden of establishing that his own Fourth Amendment rights were violated. *Rakas v. Illinois*, 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The two-part test requires that a defendant show (1) he had a subjective expectation of privacy in the searched premises and (2) that society is prepared to recognize that expectation as legitimate.

*United States v. McRae*, 156 F.3d 708, 711 (6th Cir. 1998) (citing *California v. Ciraolo*, 476

U.S. 207, 211 (1986). *See also Smith v. Maryland*, 442 U.S. 735, 740 (1979). Nonetheless, if

appellate counsel would have attached the documentation that Petitioner insists that he should

have and challenged standing, the question becomes whether it would change the outcome under

the second prong of *Strickland*, specifically, whether Petitioner can show a subjective

expectation of privacy in the binocular bag under the circumstances of the police stop.

Petitioner was arrested after the officers uncovered the firearm; thus, the search was not

incident to the arrest.

> An investigatory stop must be justified by some objective manifestation that the
> person stopped is, or is about to be, engaged in criminal activity . . . the totality of
> the circumstances - the whole picture - must be taken into account. Based upon that
> whole picture the detaining officers must have a particularized and objective basis
> for suspecting the particular person stopped of criminal activity.

*United States v. Chenault*, 133 Fed. Appx. 244, 247, 2005 WL 1285701, at *3 (6th Cir. 2005)

(citing *United States v. Cortez*, 449 U.S. 411, 417-418 (1981)). The district court and Sixth

Circuit both held that there was probably cause to stop the automobile in this case.

The Petitioner simply asserts that if appellate counsel had attached the documentation

regarding the suppression of evidence at the district court level, including his affidavit that he

had a subjective expectation of privacy in the binocular bag, he would have prevailed. Yet, an

affidavit asserting an expectation of privacy is not enough. Other than saying that the binocular

bag was his and that he told the officer during the interrogation that it was his, and signing an

affidavit to the effect, Petitioner has not brought forth any other evidence to prove that he had a

subjective expectation of privacy in the binocular bag. "Issues adverted to in a perfunctory

manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is

not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted).

Additionally, the police may search the passenger compartment of an automobile, even after removing someone from the automobile if they think it is necessary for their own security.

> In *Long*, the Court held
>> that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. *See Terry*, 392 U.S., at 21, 88 S.Ct. 1868. "[The] issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.*, at 27, 88 S.Ct. 1868.
>
> *Long*, 463 U.S. at 1049-50, 103 S.Ct. 3469 (footnote omitted). The Court also indicated that an officer could search a vehicle even if she was preparing to terminate the detention of the suspect, as it was possible that the suspect would return to his car and then use the weapon. *Id.* at 1051-52, 103 S. Ct. 3469 (Search is permissible even when suspect is already under control of officers, in part because "if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside."). Therefore, if Moyer and Darfus had lawfully detained Boone, and they had grounds for reasonable suspicion that Boone had weapons in his car, they could have conducted a search of the interior of his automobile, regardless of the plain-view rule.

*Boone v. Spurgess*, 385 F.3d 923, 929 (6th Cir. 2004).

In the present case, the officer testified that he asked Petitioner's sister, the driver of the automobile, if there were any drugs or guns in the car (Dkt. #12, page 74). He testified that she stated that "she was not aware of any being in the vehicle." (*Id.*). He further testified that "I think her last statement was, I hope not." (*Id.*). Further, there was testimony that Petitioner was reaching down between his legs and messing with something on the floorboard of the passenger

street while he was under surveillance.[14] *Jones*, 75 Fed. Appx. 334, at 336, 2003 WL 22025045, at *1; *see also* (Dkt. #12, pages 41-42)  Thus, the officers had "'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Boone*, 385 F.3d at 929 (citations omitted).

In addition, it bears repeating that the district court held that even if standing was assumed, that the search of the bag was still lawful because Petitioner's sister gave permission to search the vehicle, despite her testimony to the contrary, and that consent extended to the binocular bag (Dkt. #22, page 3).  If the police relied on this consent in good faith, there can be no Fourth Amendment error.  "[T]he prohibition [against warrantless searches, in *Gillis* a home] does not apply to situations in which voluntary consent has been obtained, either from the individual whose property is searched or from a third party who possesses common authority over the premises." *United States v. Gillis*, 358 F.3d 386, 390 (6th Cir. 2004) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). Thus, "[e]ven if a third party does not possess actual common authority over the area that was searched, the Fourth Amendment is not violated if the police relied in good faith on a third party's apparent authority to consent to the search." *Gillis*, 358 F.3d at 390 (citing  *Rodriguez*, 497 U.S. at 188-89).

Therefore, Petitioner's arguments that appellate counsel should have attached certain documentation and argued the standing issue more diligently are without merit.  Even if Petitioner could show that counsel's conduct was somehow deficient, there is no evidence and

---

[14]The Sixth Circuit noted that reaching down on the floorboard alone would not be suspicious, but that it was the totality of the circumstances. *Jones*, 75 Fed. Appx. 334, at 338, 2003 WL 22025045, at *14.

plenty of caselaw to the contrary that a different result would present itself under the circumstances.

## V.     <u>CONCLUSION</u>

Based on the foregoing, it is respectfully recommended that Petitioner's § 2255 Motion be **DENIED.**

Pursuant to Rule 72(b) of the  Fed. R. Civ. P. and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of this recommendation they may serve and file specific, written objections to the proposed findings and recommendations. Either party may respond to another party's objections within ten days after being served with a copy thereof.  The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

In accordance with the provisions of Fed. R. Civ. P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.


**DATED**: May 30, 2007                                    s/Steven D. Pepe_____
Flint, Michigan                                                      United States Magistrate Judge

## CERTIFICATE OF SERVICE

I hereby certify that on <u>May 30, 2007</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: <u>James C. Mitchell,</u>

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s):  <u>Kenneth G. DeBoer, St. Amant, Montgomery, 615 N. Capitol Avenue Lansing, MI 48933;  Shantae Jones, # 28789-039, BEAUMONT MEDIUM FCI, P. O. BOX 26040  BEAUMONT TX  77720.</u>

<u>s/James P. Peltier</u>

United States District Court

Flint, Michigan 48502

810-341-7850

E-mail: pete_peltier@mied.uscourts.gov